ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 26 2005
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| MICHAEL R. ROEHRS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.: |
| CONESYS, INC., RONALD E. SPIRE, | § | 3-05CV-0829 M |
| J-TECH, INC., JOHN POLLACK, | § | |
| and JULIE BAKER, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Michael R. Roehrs ("Roehrs") who hereby files his Original Complaint and Demand for Jury Trial as follows:

### I.
### PARTIES

1.  Plaintiff Roehrs is an individual citizen of the State of Texas with his domicile located at 5973 Willowross Way, Plano, Texas 75093 in Collin County, Texas.

2.  Defendant Conesys, Inc. ("Conesys") is a foreign corporation and a citizen of the State of California. Specifically, Conesys is incorporated in the State of California and its principal place of business is located in the State of California. Conesys is licensed to do business in the State of Texas and regularly conducts such business in the State of Texas and has committed torts within the State of Texas as described herein. Pursuant to the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE §17.041, *et seq.*, Conesys can be served with process by serving, via certified mail, the Texas Secretary of State because Conesys engages in business in

the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas, and this proceeding arises out of Conesys' business in the State of Texas. The Texas Secretary of State can serve Conesys by forwarding a copy of process to Conesys' registered agent at Conesys' home office in California at Teresa Deforeest, 548 Amapola Ave., Torrance, CA 90501.

3.   Defendant Ronald E. Spire ("Spire") is an individual citizen of the State of California. Spire maintains regular and consistent contacts with the State of Texas, engages in business in the State of Texas, and has committed torts within the State of Texas as described herein. Pursuant to the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE §17.041, *et seq.*, Spire can be served with process by serving, via certified mail, the Texas Secretary of State because Spire engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas, and this proceeding arises out of Spire's business in the State of Texas. The Texas Secretary of State can serve Spire by forwarding a copy of process to Spire's home in California at 50 Amalfi Dr., Santa Monica, CA 90402, or wherever he may be found.

4.   Defendant J-Tech, Inc. ("J-Tech") is a foreign corporation and a citizen of the State of California. Specifically, J-Tech is a subsidiary and/or division of Defendant Conesys and is incorporated in the State of California and its principal place of business is located in the State of California. J-Tech is licensed to do business in the State of Texas and regularly conducts such business in the State of Texas and has committed torts within the State of Texas as described herein. Pursuant to the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE §17.041, *et seq.*, J-Tech can be served with process by serving, via certified mail, the Texas Secretary of State because J-Tech engages in business in the State of Texas, but does not

maintain a regular place of business in Texas or a designated agent for service of process in Texas, and this proceeding arises out of J-Tech's business in the State of Texas. The Texas Secretary of State can serve J-Tech by forwarding a copy of process to J-Tech's home office in California at Teresa Deforeest, 548 Amapola Ave., Torrance, CA 90501 or J-Tech's President, Vice-President, or other person authorized to receive service at 14251 Franklin Ave., Tustin, CA 92780.

5.   Defendant John Pollack ("Pollack") is an individual citizen of the State of California. Pollack maintains regular and consistent contacts with the State of Texas, engages in business in the State of Texas, and has committed torts within the State of Texas as described herein. Pursuant to the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE §17.041, *et seq.*, Pollack can be served with process by serving, via certified mail, the Texas Secretary of State because Pollack engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas, and this proceeding arises out of Pollack's business in the State of Texas. The Texas Secretary of State can serve Pollack by forwarding a copy of process to Pollack's home office in California at 1525 East Warner Ave., Santa Ana, CA 92705, or wherever he may be found.

6.   Defendant Julie Baker ("Baker") is an individual citizen of the State of California. Baker maintains regular and consistent contacts with the State of Texas, engages in business in the State of Texas, and has committed torts within the State of Texas as described herein. Pursuant to the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE §17.041, *et seq.*, Baker can be served with process by serving, via certified mail, the Texas Secretary of State because Baker engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas, and this proceeding arises out of

Baker's business in the State of Texas. The Texas Secretary of State can serve Baker by forwarding a copy of process to Baker's home office in California at 1525 East Warner Ave., Santa Ana, CA 92705, or wherever she may be found.

## II.
## JURISDICTION AND VENUE

7. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in Dallas County, Texas.

## III.
## BACKGROUND FACTS

9. Conesys is a holding company that owns various companies in the business of designing, manufacturing, and selling electric connectors that are used predominantly in military and air frame applications. In late 2000, Conesys desired to acquire a company specializing in the field of fiber optic connectors to complete its product portfolio and make the company more attractive to potential investors. In order to accomplish this objective, Conesys was interested in acquiring a company known as Fiber Systems International, Inc. ("FSI")

10. FSI was a privately owned Texas corporation that specialized in designing, developing, manufacturing, and selling fiber optic connectors and interconnect solutions primarily to the military. Roehrs founded FSI in 1993 and was FSI's President, CEO, and majority shareholder (54% shareholder). The other executive officers and primary shareholders of FSI included: Daniel Roehrs (Vice-President, 14.6% shareholder); Rick Hobbs (General

Manager, 1% shareholder); Tom Hazelton (Director of Business Development, 5.8% shareholder); Kieran McGrath (Chief Financial Officer, 3% shareholder); Michael Flowers (Vice President of Engineering, 9.6% shareholder); and Ardella Simacek (Director of Human Resources, 9.6% shareholder). Daniels Roehrs, Rick Hobbs, Tom Hazelton, Kieran McGrath, Michael Flowers, and Ardella Simacek are hereinafter collectively referred to as the "Minority Group."

11. In or about November 2000, Conesys approached FSI about the possibility of acquiring FSI. Specifically, Ron Spire, a third party deal maker, approached FSI on behalf of and as an agent of Conesys to discuss the potential of an acquisition. Spire was the primary point of contact between the management team at Conesys and the management team at FSI.

12. Conesys offered to acquire FSI in exchange for cash and stock. Roehrs had substantial reservations about the prospect of Conesys' offer to acquire FSI and expressed those concerns to FSI's officers and shareholders. Nevertheless, Roehrs continued to explore the possibility of Conesys' acquisition of FSI, as long as any such deal was in the best interest of FSI's shareholders. Thus, on or about February 2001, Roehrs sent Daniel Roehrs and Kieran McGrath to San Francisco to meet with ING Bearing, Conesys' investment banker, and Ron Spire to discuss Conesys' proposal to acquire FSI.

13. During the San Francisco meeting, Conesys, cognizant of Roehrs' concerns about its acquisition of FSI, sought to cut a backdoor deal with Daniel Roehrs whereby Conesys offered to make Daniel Roehrs the President and CEO of any potential successor to a Conesys-FSI merger if Daniel Roehrs was able to consummate Conesys' acquisition of FSI.

14. Following the San Francisco meeting, McGrath informed Roehrs about Conesys' backdoor deal with Daniel Roehrs. After learning of this backdoor deal, Roehrs held a board

meeting where he persuaded the Board of Director to pass a resolution to retain a securities firm to analyze the financial implications to FSI's shareholders of Conesys' potential acquisition of FSI.

15. In accordance with the FSI Board resolution, FSI retained Frost Securities to analyze the Conesys proposal, and Frost Securities concluded that the proposed acquisition was not in the best interest of FSI's shareholders. In or about May 2001, Frost Securities made a presentation to FSI's Board of Directors regarding their findings and recommending that the Board reject Conesys' proposal to acquire FSI. At that time, the Board unanimously agreed to reject Conesys' proposal.

16. Although Conesys' proposal to acquire FSI has been rejected, Conesys continued to have back channel communications with Daniel Roehrs for the purpose of conspiring on ways of removing Roehrs from FSI and/or otherwise diluting his ownership interest in FSI so that Roehrs would no longer maintain a majority position within FSI, and therefore, effective Roehrs as an obstacle to Conesys' acquisition of FSI.

17. On or about November 19, 2001, while Roehrs was out of the country on FSI company business, Daniel Roehrs, in a conspiracy with others, including, on information and belief, Conesys, Spire, J-Tech, Pollack, and Baker, hijacked control of FSI by filing a false lawsuit against Roehrs in District Court in Collin County, Texas (the "Hijack Lawsuit"). In the Hijack Lawsuit, Daniels Roehrs, and the rest of the Minority Group, falsely alleged that Roehrs was engaging in criminal activity and was unfit to lead to FSI. Through the Hijack Lawsuit, Daniel Roehrs, and the rest of the Minority Group, obtained temporary injunctive relief allowing them to lock Roehrs out of FSI.

18. As part of the Hijack Lawsuit, Reohrs demanded that a bond hearing be held and that Daniel Roehrs, and the rest of the Minority Group, post a bond to support their application for injunctive relief. The District Court in Collin County ordered Daniel Roehrs, and the rest of the Minority Group, to post a bond in the amount of $300,000. Significantly, Daniel Roehrs, and the rest of the Minority Group, lacked sufficient funds to post the bond. Thus, Conesys, through its subsidiary J-Tech and/or J-Tech's principals, Pollack and Baker, agreed to post the bond on behalf of FSI by guaranteeing the $300,000 for the sole purpose of continuing to lock Roehrs out of FSI.

19. On or about March 22, 2002, after discovering that Conesys had put the money up for the bond, the Collin County court overseeing the Hijack Lawsuit dissolved the TRO and permitted corporate governance to resolve any remaining shareholder issues.

20. FSI's bylaws required a 10 day notice for shareholder meetings and a 5 day notice for meetings of the Board of Directors. On March 22, 2002, Roehrs called a shareholder meeting for the purpose of removing the Minority Group from the Board of Directors. Pursuant to FSI's by-laws, the shareholder meeting was scheduled to occur on April 1, 2002. However, also on March 22, 2002, Daniel Roehrs, and the rest of the Minority Group, in an ongoing conspiracy with Conesys, Spires, J-Tech, Pollack, and Baker, called a Board meeting for the purpose of canceling a certain percentage of Roehrs' stock and granting ownership of that stock to Conesys in order to block Roehrs' attempt to remove the current Board of Directors and to effectuate the sale of FSI to Conesys.

21. Thus, on or about March 28, 2002, FSI's Board passed a resolution illegally canceling a certain percentage of Roehrs' FSI shares and transferring ownership of those shares

to Conesys. Unsurprisingly, the number of Roehrs' shares wrongfully cancelled by FSI and transferred to Conesys rendered Roehrs a minority shareholder.

22.     However, pursuant to FSI's bylaws, the shareholder meeting scheduled for April 1, 2002, merely required notice to shareholders of record as of the date of notice. Thus, on April 1, 2002, Roehrs, as a majority shareholder, invalidated the Board's cancellation and transfer of Roehrs' shares to Conesys and removed the Minority Group from FSI's Board of Directors.

23.     On April 4, 2002, a routine hearing in the Hijack Lawsuit was held in regard to the Minority Group's previously filed Motion to Substitute Counsel. Because Roehrs did not receive notice of the hearing, neither he nor counsel appeared. Remarkably, although no motion was ever filed regarding the validity of the April 1, 2002 shareholder meeting, the order granting FSI's Motion for Substitution of Counsel contained language invalidating the April 1, 2002 shareholder meeting, thereby permitting Conesys to improperly maintain control of Roehrs' shares.

24.     As a result of Conesys' improper acquisition of Roehrs' shares, Roehrs no longer held a sufficient percentage of shares to remove the Minority Group from the Board of Directors and terminate the Hijack Lawsuit.

25.     In or about December 2002, the parties to the Hijack Lawsuit conducted a summary jury trial, which resulting in a favorable verdict for Roehrs. Following the summary jury trial, FSI's counsel withdrew and the Collin County court appointed an attorney ad litem, Timothy Zeiger, to represent FSI's interests in the Hijack Lawsuit. The Minority Group was required to obtain alternative counsel.

26.     As FSI's ad litem, Zeiger was required to file certain reports with the court. In one of those reports, Zeiger concluded that FSI's Board improperly transferred Roehrs' shares to

Conesys. Shortly thereafter, the parties to the Hijack Lawsuit reached a compromise and settlement agreement wherein Roehrs was given 90 days to find sufficient funds to purchase the Minority Group's shares, and if Roehrs' was unable to procure the required funding, the Minority Group would then be given 90 days to purchase Roehrs' shares.

27. During Roehrs' 90 day window to obtain funding, Conesys continued to engage in its ongoing pattern of interference by: (1) working with the Minority Group to sabotage investment deals Roehrs had arranged; (2) working with the Minority Group to prevent Roehrs from taking advantage of the terms and conditions of the compromise and settlement agreement; and (3) after Roehrs obtained funding to purchase the Minority Group's shares, bringing suit against FSI's ad litem, Zeiger, in an attempt to block Roehrs' ability to consummate the purchase of the Minority Group's shares.

28. The Defendants' ongoing and continuous pattern of interference proximately caused Roehrs to suffer millions of dollars of damages in additional legal expenses in the Hijack Lawsuit and to obtain financing for the procurement of the Minority Group's shares on terms and conditions that were much less favorable to Roehrs than he would have been able to obtain in the absence of the Defendants' tortious conduct.

29. All conditions precedent to bringing this action have occurred or have been waived.

## IV.
## CAUSES OF ACTION

### COUNT 1: TORTIOUS INTERFERENCE WITH CONTRACT AND/OR BUSINESS RELATIONSHIP
(Against All Defendants)

30. Plaintiff incorporates paragraphs 1-29 as though fully set forth herein.

31. Roehrs had an existing contract or ongoing business relationship with FSI as a shareholder and executive officer of FSI.

32. Defendants willfully and intentionally interfered with Roehrs' contracts and/or business relationships by: (1) making back-door deals to Daniel Roehrs and the other members of the Minority Group to facilitate a sale of FSI to Conesys; (2) interfering with Roehrs' position within FSI; (3) improperly aiding, abetting, and assisting in the prosecution of the Hijack Lawsuit; (4) improperly converting Roehrs' stock to dilute his shareholder status; (5) interfering with the settlement of the Hijack Lawsuit; and (6) interfering with Roehrs ability to acquire financing to acquire to purchase the Minority Group's shares. Defendants actions were continuous and ongoing and constitute a continuous tort that continued at least until December 2003.

33. As a proximate cause of Defendants' continuous tortious interference, Roehrs has suffered substantial economic damages within the jurisdictional limits of this court.

### COUNT 2: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIP
(Against All Defendants)

34. Plaintiff incorporates paragraphs 1-29 as though fully set forth herein.

35. Roehrs had a reasonable probability of contracting with certain third-party investors to acquire the financing necessary to purchase the Minority Group's shares under the compromise and settlement agreement.

36. Between August 2003 and December 2003, Defendants intentionally interfered with Roehrs' prospective economic relationships with these third-party investors by aiding, abetting, and assisting the Minority Group in blocking the acquired financing.

37. Defendants knew about Roehrs' prospective economic relationship with these third-party investors and sought to interfere with these relationships so that the Minority Group would be able to acquires Roehrs' shares and thereafter acquire FSI.

38. As a proximate cause of Defendants' intentional interference with Roehrs' prospective economic relationships, Roehrs was forced to obtain financing under terms that were substantially less favorable and has suffered substantial economic damages within the jurisdictional limits of this court.

### COUNT 3: MALICIOUS PROSECUTION
### (Against All Defendants)

39. Plaintiff incorporates paragraphs 1-29 as though fully set forth herein.

40. On or about November 21, 2001, 1 civil proceeding was filed against Roehrs, to wit, the Hijack Lawsuit.

41. The Hijack lawsuit was filed by the Minority Group at the insistence of the Defendants and was continued by the Defendants through their agreement to post the injunction bond even though they had no direct interest in the litigation.

42. Defendants acted with malice in instigating and continuing the Hijack Lawsuit for the purpose of divesting Roehrs of his ownership interest in FSI and to acquire FSI after Roehrs was removed.

43. Defendant did not have probable cause to instigate or continue the Hijack Lawsuit.

44. On or about August 25, 2003, as a result of the summary jury trial and the acquisition of necessary finances to purchase the Minority Group's shares of FSI stock, the Hijack Lawsuit was voluntarily terminated in Roehrs' favor.

45. Roehrs suffered special injuries in the Hijack lawsuit, including the court's entry of injunctive relief, being locked out of FSI, and having his shares improperly converted by Conesys.

46. As a result of Defendants' malicious prosecution of the Hijack Lawsuit, Roehrs suffered substantial economic damages within the jurisdiction of the Court. Moreover, Defendants' malicious prosecution of the Hijack Lawsuit proximately caused substantial injury to Roehrs' personal reputation and caused Roehrs to suffer substantial physical and emotional distress.

### COUNT 4: CONVERSION
### (Against Conesys)

47. Plaintiff incorporates paragraphs 1-29 as though fully set forth herein.

48. Roehrs owned, possessed, or had legal title to his shares of FSI stock.

49. Roehrs' FSI stock constitutes personal property that is subject to conversion.

50. Conesys improperly acquired Roehrs' stock through a fraudulent stock transfer, which Conesys knew was fraudulent, without Roehrs' authorization.

51. Roehrs demanded that Conesys return his stock, but Conesys refused, or in the alternative, demand was excused because Conesys' actions constitute a clear repudiation of Roehrs' rights to said property and/or demand would be useless.

52. As a proximate cause of Conesys' conversion of Roehrs' property Roehrs has suffered substantial economic damages within the jurisdictional limits of this court.

### COUNT 5: CIVIL CONSPIRACY
### (Against All Defendants)

53. Plaintiff incorporates paragraphs 1-52 as though fully set forth herein.

54. The Defendants, in combination with one another and one or more members of the Minority Group, conspired with one another to improperly: (1) remove Roehrs from his position within FSI; (2) reduce Roehrs' majority interest within FSI; and/or (3) remove Roehrs' as an obstacle to the Defendants' desire to effectuation Conesys' acquisition of FSI.

55. The members of the conspiracy had a meeting of the minds on the object of the conspiracy and/or the course of action as described herein.

56. One or members of the conspiracy committed an unlawful, overt act to further the object of the conspiracy and/or the course of action as described herein.

57. As a proximate cause of the conspiracy and the acts alleged herein, Roehrs suffered substantial economic and other damages within the jurisdictional limits of the Court for which each of the Defendants is jointly and severally liable.

## COUNT 6: AIDING AND ABETTING LIABILITY
### (Against All Defendants)

58. Plaintiff incorporates paragraphs 1-52 as though fully set forth herein.

59. One or more of the Defendants and/or one or more members of the Minority Group committed the torts described herein.

60. Defendants had knowledge of these torts, and knew that the actions were tortious.

61. Defendants intended to assist, encourage, and/or participate in the commission of these torts, and did so assist, encourage, and/or participate in the commission of these torts.

62. Defendants assistance, encouragement, and/or participation was a substantial factor in causing these torts, and therefore, each of the Defendants are jointly and severally liable for all acts and omissions alleged herein.

# V.
# DAMAGES/PUNITIVE DAMAGES

63. As a result of Defendants' aforementioned conduct, Roehrs has suffered both general and special damages, including, but not limited to: (1) lost profits; (2) lost business opportunities; (3) lost investment; (4) damage to reputation; (5) damage to goodwill; (6) severe physical and emotional distress; (7) loss of use of personal property; (8) lost value of money; (9) attorneys' fees and costs in the Hijack Lawsuit.

64. Defendants' aforementioned conduct was committed with malice, and therefore, Roehrs is entitled to exemplary damages to punish and deter such future violations of the law in an amount to be determined at trial.

65. Roehrs is entitled to prejudgment and post-judgment interest at the maximum rate permitted by law.

66. Roehrs is entitled to recover its costs of court.

# VI.
# JURY DEMAND

67. Roehrs demands a trial by jury on all issues of fact.

# VII.
# PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Michael R. Roehrs respectfully prays that:

1. Defendants be cited to appear and answer herein;

2. Roehrs be awarded judgment against Defendants for all of his compensatory damages, general and special, as described herein;

3. Roehrs be awarded judgment against Defendants for exemplary damages;

4. Roehrs recover pre-judgment interest on the sums awarded at the highest rate allowed by law from the date of demand to the date of judgment;

5.  Roehrs recover post-judgment interest on the sums awarded at the highest rate allowed by law from the date of judgment until the date the judgment is satisfied;

6.  Roehrs recover all costs of suit;

7.  Roehrs recover such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

Brian A. Colao
State Bar No. 00793528
Christopher M. LaVigne
State Bar No. 24026984

GREENBERG TRAURIG LLP
600 Three Galleria Tower
13155 Noel Road
Dallas, Texas 75240
Telephone: (972) 419-1250
Telecopier: (972) 419-1251

**ATTORNEYS FOR PLAINTIFF,
MICHAEL R. ROEHRS**