ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 4 2005

CLERK, U.S. DISTRICT COURT
By _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL R. ROEHRS,                  §
                                    §
            Plaintiff,              §
                                    §
v.                                  §        Civil Action No. 3:05-CV-829-M
                                    §
CONESYS, INC., RONALD E. SPIRE,     §
J-TECH, INC., JOHN POLLOCK, and     §
JULIE BARKER,                       §
                                    §
            Defendants.             §

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) the Motion to Dismiss Plaintiff's Original Complaint, filed by

Defendants Conesys, Inc., Ronald E. Spire, and J-Tech, Inc. on June 10, 2005; (2) the Motion to

Dismiss Plaintiff's Original Complaint, filed by John Pollock and Julie Barker on July 26, 2005;

and (3) Plaintiff's Cross-Motion to Compel Jurisdictional Discovery, filed on September 7, 2005.

The Court **GRANTS** the Motions to Dismiss and **DENIES** the Cross-Motion to Compel

Jurisdictional Discovery.

The original caption misspelled the names of Defendants Pollock and Barker. The Court

orders the Clerk of Court to amend the caption to reflect the above changes.

## I. FACTUAL BACKGROUND

For the purpose of a motion to dismiss, all facts pleaded in the Complaint must be taken

as true, although the Court need not accept as true conclusory allegations or unwarranted

deductions of fact. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 497 (5th Cir.

2000); *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). The Court,

-1-

therefore, will relate the facts as pleaded in the Complaint without passing judgment on their actual veracity.

Plaintiff Michael Roehrs ("Roehrs") was the president and majority shareholder of Fiber Systems International ("FSI"), a high-tech fiber optic company. Conesys, Inc. ("Conesys") became interested in acquiring FSI. On November 19, 2001, the minority shareholders of FSI (the "Minority Group"), with the assistance of Defendants, brought a civil suit (the "Lawsuit"), against Plaintiff in Texas state court, alleging that the court should not permit Plaintiff to return to FSI, stating that he was a danger to himself and others.[1] As a condition to granting the Minority Group's request for injunctive relief, the court required the Minority Group to post a $300,000 bond. The Minority Group lacked the requisite funds to post the bond; instead, Conesys guaranteed the bond through its subsidiary, J-Tech, and its principals, Pollock and Barker. The court issued a temporary restraining order prohibiting Roehrs from entering FSI's premises during the pendency of the litigation. On March 22, 2002, the court dissolved the temporary restraining order.[2]

On March 22, 2002, Roehrs called a meeting of the FSI shareholders for April 1, 2002. However, on March 22, 2002, the Minority Group called a Board meeting, which occurred on March 28, 2002. At the meeting, FSI's Board passed a resolution cancelling a percentage of Roehrs' stock and transferring that stock to Conesys.[3] On April 1, 2002, at the shareholders

---

[1]The Minority Group alleged, *inter alia*, that Roehrs carried guns to work, used drugs, and laundered millions of dollars.

[2]According to Roehrs, the court dissolved the temporary restraining order because it discovered that Conesys had financed the bond.

[3]If effective, the cancellation would leave Roehrs with insufficient stock ownership to take certain actions he otherwise could have taken.

meeting, Roehrs purported to invalidate the Board's cancellation of his stock and remove all members of the Minority Group from the Board of Directors.[4] On April 4, 2002, the court in the Lawsuit invalidated the shareholders meeting of April 1, 2002. After April 4, 2002, Roehrs did not hold a sufficient percentage of shares to remove the Minority Group from the Board or terminate the Lawsuit.

In December 2002, after the court ordered the parties to alternative dispute resolution ("ADR"), a mock jury in a summary trial returned a verdict favorable to Roehrs. Following the ADR, the court appointed an attorney ad litem to represent FSI's interests, and all parties to the Lawsuit entered into a compromise and settlement agreement. The agreement gave Roehrs ninety days to obtain funding and purchase the Minority Group's shares. If Roehrs did not purchase those shares within ninety days, the Minority Group would then have ninety days to purchase Roehrs' shares.

Plaintiff alleges that Conesys worked with the Minority Group to (1) sabotage investment deals Roehrs had arranged and (2) bring suit against FSI's ad litem, thereby interfering with Plaintiff's efforts to acquire the Minority Group's shares. Although Roehrs found financial backing, he claims the terms and conditions of his financing were much less favorable than would have been available to him in the absence of Defendants' conduct.

Plaintiff sues Defendants for tortious interference with contract and/or business relationship, tortious interference with prospective economic relationship, malicious prosecution,

---

[4]Although on March 28, 2002, the Board had cancelled a percentage of Roehrs' shares, the number of shares each shareholder could vote at the April 1, 2002, shareholder meeting was calculated based on the number of shares owned when the meeting was called–March 22, 2002, before the purported cancellation.

conversion,[5] civil conspiracy, and aiding and abetting.[6] Defendants move to dismiss the entire action.

## II. STANDARD OF REVIEW

A cause of action should be dismissed under Rule 12(b)(6) only if there is no possible set of facts upon which a plaintiff could prevail on that cause of action. *United States ex rel. Bain v. Ga. Gulf Corp.,* 386 F.3d 648, 653 (5th Cir. 2004). In deciding a 12(b)(6) motion, the court "accepts all well-pleaded allegations as true, and views them in the light most favorable to the plaintiff." *Davis v. Blockbuster, Inc.*, No. 3:04-CV-2393-M, 2005 U.S. Dist. LEXIS 2100, at *3 (N.D. Tex. Feb. 14, 2005) (Lynn, J.) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). The court "will not strain to find inferences favorable to the [plaintiff] and will not accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (internal citation and quotation omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## III. STATUTE OF LIMITATIONS

Defendants assert that the statute of limitations bars Plaintiff's claims of conversion, civil

---

[5]Plaintiff claims conversion against Conesys alone.

[6]Plaintiff claims civil conspiracy and aiding and abetting with respect to the claims of interference with contract and/or business relationship, interference with prospective economic relationship, conversion, and malicious prosecution.

conspiracy,[7] tortious interference with contract or business relationship, and malicious

prosecution.[8]

## A. Conversion

Plaintiff claims that Conesys converted his stock. Conesys argues that the Texas two-year

statute of limitations bars this claim, since it begins to run at the time of the alleged unlawful

taking. *See Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 166 (Tex. App. – Amarillo 1996,

writ denied) (holding that a two-year statute of limitations applies to claims of conversion).

Because the alleged conversion occurred at the Board meeting on March 28, 2002, which

occurred more than two years before the filing of plaintiff's claim on April 26, 2005, Conesys

argues that the claim is barred.

Plaintiff urges the court to apply the "continuing tort" doctrine to his conversion claim.

Under the continuing tort doctrine, a plaintiff's claim does not accrue, and the statute of

limitations does not start to run, until the defendant's ongoing tortious conduct ceases. *See First*

*Gen. Realty Corp. v. Md. Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App. – Austin 1998, pet. denied).

To support his assertion, Roehrs cites cases where Texas courts applied the continuing tort

doctrine to diverse legal claims and factual situations. *See W.W. Laubach Trust v. Georgetown*

*Corp.*, 80 S.W.3d 149, 159-160 (Tex. App. – Austin 2002, pet. denied); *Twyman v. Twyman*, 790

S.W.2d 819, 820-21 (Tex. App. – Austin 1990), *rev'd on other grounds*, 855 S.W.2d 619 (Tex.

---

[7]Because the Court dismisses Plaintiff's claims of conspiracy on other grounds, it does not reach the question of whether the claims are barred by limitations.

[8]Both sides cite Texas law throughout their briefs, implicitly asserting that Texas law governs this action. The Court will apply Texas law.

1993); *Newton v. Newton*, 895 S.W.2d 503, 506 (Tex. App. – Ft. Worth 1995, no writ); *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex. App. – Houston [14th Dist.] 1995, no writ).

The continuing tort doctrine applies only to repeated acts that occur over an extended period of time. *See W.W. Laubach Trust*, 80 S.W.3d at 159-160. The doctrine does not apply to actions that are "complete in themselves;" rather, it applies to a continuing course of conduct, which, over time, causes injury. *See Twyman*, 790 S.W.2d at 821 (applying the continuous tort doctrine when a husband repeatedly urged that his wife's participation in certain sexual conduct was necessary to save their marriage); *Newton*, 895 S.W.2d at 506. In the area of trademarks, a claim is actionable throughout the period of infringement, and is therefore a "continuous harm." *See Two Pesos, Inc.*, 901 S.W.2d at 500; *cf. Brunswick Corp v. Spinit Reel*, 832 F.2d 513, 526 (10th Cir. 1987).

The Plaintiff misapplies the doctrine to his conversion claim. He claims that the following actions by Defendants justify invocation of the continuing tort doctrine: (1) the filing of the Lawsuit on November 19, 2001; (2) the posting of a $300,000 bond; (3) the conversion of Roehrs' FSI shares; (4) the sabotaging of investment deals Roehrs had arranged; (5) the actions which prevented Roehrs from taking advantage of the Compromise and Settlement Agreement; and (6) the filing of the suit against FSI's attorney ad litem. Plaintiff argues that this "ongoing series of torts" supports application of the continuing tort doctrine. The cases cited by Plaintiff do not support the application of the continuing tort doctrine in this situation. *Cf. W.W. Laubach Trust*, 80 S.W.3d at 159-160. Plaintiff argues that, like *Twyman*, where "one spouse's pattern of abuse" invoked the continuing tort doctrine, here, Roehrs' "ongoing injuries every day he was

locked out of FSI and every day his stock was converted" justify application of the doctrine. In

contrast to *Twyman*, here Roehrs alleges a series of distinct instances of conduct, only one of

which is arguably conversion. This is not the type of "repeating" tort that merits application of

the continuing tort doctrine. The fact that Plaintiff was subjected to "ongoing injuries" will not

support application of that doctrine here. *Dickson Constr. v. Fidelity & Deposit Co.*, 960 S.W.2d

845, 852 (Tex. App. – Texarkana 1997, no pet.) ("The fact that the injury and damages may have

continued to grow over time after the initial injury . . . does not make the wrongful action a

continuing tort or toll the running of the statute of limitations.") The action taken at the Board

meeting was "complete in itself;" the Court will not apply the continuing tort doctrine to extend

the time when limitations begin to run beyond that date. *See Twyman*, 790 S.W.2d at 821.

Plaintiff further disputes the date that the alleged conversion accrued. The claim accrued

either at the Board meeting of March 28, 2002; at the shareholder meeting of April 1, 2002; or at

the court hearing of April 4, 2002. *See Rogers*, 930 S.W.2d at 166.[9] However, each of these

events occurred more than two years before Roehrs filed this action. The statute of limitations

therefore bars the conversion claim. To the extent that Plaintiff's suit is based on the alleged

conversion of Roehrs' shares at the Board meeting of March 28, 2002, the Court **DISMISSES**

that cause of action with prejudice.

---

[9]"The general rule is that the statute of limitations begins to run at the time of the
unlawful taking. However, if the original possession is not unlawful, the limitations period does
not begin to run until return of the property has been demanded and refused, or until the person in
possession has unequivocally exercised acts of domination over the property inconsistent with
the claims of the owner or the person entitled to possession." *Rogers*, 930 S.W.2d at 166
(citation omitted).

B. Tortious Interference with Contract and/or Business Relationship

Plaintiff claims that Defendants interfered with Roehrs' contract or ongoing business relationship with FSI by: (1) making back-door deals with the Minority Group to facilitate a sale of FSI to Conesys; (2) interfering with Roehrs' position within FSI; (3) improperly aiding, abetting, and assisting in the prosecution of the Lawsuit; (4) improperly converting Roehrs' stock to dilute his shareholder status; (5) interfering with the settlement of the Lawsuit; and (6) interfering with Roehrs' ability to acquire financing to purchase the Minority Group's shares.

In Texas, tortious interference claims are governed by a two-year statute of limitations. *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986). This claim accrues when (1) the contract or business relationship is interfered with, and (2) harm is caused to the plaintiff. *See Hill v. Heritage Resources*, 964 S.W.2d 89, 116 (Tex. App. – El Paso 1997, pet. denied).

Plaintiff, again, argues that the continuing tort doctrine applies to this claim. The Court disagrees. Plaintiff does not allege the type of ongoing wrong which merits the application of the continuing tort doctrine.

Because Plaintiff filed suit on April 26, 2005, to survive limitations, Plaintiff must allege conduct that occurred after April 26, 2003, to avoid the bar of the statute of limitations. Defendants' (1) alleged back-door deals with members of the Minority Group to facilitate a sale of FSI to Conesys; and (2) improper conversion of Roehrs' stock to dilute his shareholder status are both based on events predating April 26, 2003, and therefore Plaintiff's claims of tortious interference based on these facts are barred by limitations.

Plaintiff alleges that Defendants improperly aided, abetted, and assisted in the prosecution of the Lawsuit, which was not terminated until August 25, 2003. Because the Court declines to

-8-

apply the continuing tort doctrine, the cause of action accrues when Defendants first interfered with the contract and caused harm to the plaintiff, not when Defendants' interference ends. *See Hill*, 964 S.W.2d at 116. The Minority Group brought the Lawsuit in 2002, more than two years before the filing of Plaintiff's lawsuit. Therefore, Plaintiff's tortious interference claims based on these facts are barred by limitations.[10]

The Court dismisses the rest of Plaintiff's claims of tortious interference due to pleading defects. Plaintiff cannot pursue tortious interference claims based on Defendants' (1) interfering with Roehrs' position within FSI; (2) interfering with the settlement of the Lawsuit; or (3) interfering with Roehrs' ability to acquire financing to purchase the Minority Group's shares. The elements of tortious interference with a contract or business relationship are: (1) the existence of a contract or business relationship subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) an action constituting a proximate cause of the claimant's damage; and (4) the causing of actual damage or loss. *See Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 856-57 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). To satisfy the second element, Plaintiff must allege a specific act of interference by Defendants. The Court refuses to recognize conclusory allegations of interference untied to specific acts of interference. *See R2 Invs. LDC*, 401 F.3d at 642 ("The court . . . will not accept conclusory allegations . . . or legal conclusions.")

To the extent that Plaintiff's claims of tortious interference are based on acts of interference that occurred before April 26, 2003, the Court **DISMISSES** Plaintiff's claims of tortious interference with contract and/or business relationship with prejudice as barred by the

---

[10]For the same reason, Plaintiff's allegation in his brief that Defendants "continued to conspire" until December 2003 cannot prevent dismissal on the basis of the statute of limitations.

statute of limitations. The Court **GRANTS** Plaintiff leave to amend these claims to allege acts of

interference that occurred after April 26, 2003. *See Lopez v. City of Dallas*, 2004 U.S. Dist.

LEXIS 18220, at *13-14 (N.D. Tex. Sept. 9, 2004) (Lynn, J.).


## C. Malicious Prosecution

Plaintiff asserts that Defendants acted with malice in instigating the Lawsuit on

November 21, 2001, and which was voluntarily terminated in Plaintiff's favor on August 25,

2003.

Plaintiff argues that a two-year statute of limitations governs claims for civil malicious

prosecution, citing *Toranto v. Wall*, 891 S.W.2d 3, 6 (Tex. App. – Texarkana 1994, no pet.).

Defendants urge that a one-year statute of limitations governs such claims. *See Tex. Civ. Prac. &*

*Rem. Code* § 16.002(a) ("A person must bring suit for malicious prosecution . . . not later than

one year after the day the cause of action accrues."). In *Toranto*, the court held that the malicious

prosecution statute of limitations, which is in the Texas *Civil* Practices and Remedies Code, only

applies to criminal malicious prosecution, based exclusively on a hoary Texas Supreme Court

decision. *See Toranto*, 891 S.W.2d at 6 (*citing Bear Bros. & Hirsch v. Marx & Kempner*, 63 Tex.

298, 301 (1885)[11]). The Court disagrees. Based on the plain language of the statute, which is part

of a civil code, and in light of recent opinions, the Court holds that a one-year statute of

---

[11]In *Bear Bros.*, the court stated: "In the construction of statutes . . . the rule *noscitur a sociis* is very frequently applied; the meaning of a word . . . [is] ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, *ejusdem generis*, and referable to the same subject-matter." *Id.* at *3 (citing Broom's Legal Maxims 593). Applying this rule, the court found that "it seem[ed] more in harmony with the letter and spirit of the entire article" to only apply the statute to claims of criminal malicious prosecution. *Id.*

limitations applies. *See Costello v. Corbett Personnel Servs. Inc.*, 1996 WL 183772, at *2 (Tex. App. – Houston [14th Dist.] Apr. 18, 1996, writ denied); *Kaplan v. Clear Lake City Water Auth.*, 1992 WL 383881, at *5 (Tex. App. – Houston [14th Dist.] Dec. 23, 1992, writ denied); *see also Internet Corporativo S.A. de C.V. v. Bus. Software Alliance, Inc.*, No. Civ.A. H-04-2322, 2004 WL 3331843, at *8 (S.D. Tex. Nov. 15, 2004) (Rosenthal, J.) (holding the same).

Plaintiff has not alleged any facts that occurred within a year of the filing of this lawsuit. The statute of limitations therefore bars this claim; the Court **DISMISSES** Plaintiff's claim of malicious prosecution with prejudice.


IV. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIP

Defendants argue that Plaintiff's claim of tortious interference with prospective economic relationship should be dismissed.

The Court agrees. Plaintiff has not pleaded facts that support a claim of tortious interference with prospective economic relationship. The elements of this cause of action include: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that *prevented the relationship from occurring*; (3) the defendant having acted with a conscious desire to prevent the relationship from occurring or having known the interference was certain or substantially certain to occur as a result of defendant's conduct; and (4) the plaintiff having suffered actual harm or damages as a result of the defendant's interference. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, No. 03-03-00631-CV, 2005 Tex. App. LEXIS 4898 at *27-28 (Tex. App. – Austin, June 23, 2005, no pet. history); *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401

-11-

(Tex. App. – Waco 2001, pet. denied); *Baty*, 63 S.W.3d at 860. Plaintiff alleges that he was

successful in securing financing, albeit on less than ideal terms. However, because the

relationship was not prevented from occurring, Plaintiff has not properly pleaded the second

element of this claim. *See Tex. Disposal*, 2005 Tex. App. LEXIS 4898 at *28.

     *Texas Disposal Systems Landfill, Inc. v. Waste Management Holdings, Inc.*, informs this

Court's analysis. In this case, the plaintiff alleged tortious interference with prospective

contractual relationship in connection with contracts for waste removal in the cities of San

Antonio and Austin. 2005 Tex. App. LEXIS 4898 at *27. Although Texas Disposal was

eventually awarded the contracts it sought, it alleged that the defendant caused delays in Texas

Disposal's obtaining the contracts. *Id.* The court dismissed the claim on summary judgment. *Id.*

at *28. The court held that "[b]ecause [plaintiff] was awarded both contracts it sought, [plaintiff]

cannot prove . . . that [defendant] prevented the contracts from forming." *Id.* The court further

explained that:

> Implicit in [plaintiff's] claim is an invitation to expand the doctrine of
> tortious interference with prospective business relationships to make actionable
> conduct that results in delaying the execution of a contract, even though the
> formation of the contract was not prevented. Delays caused by competitor conduct
> are inherent in the course of doing business, and enlarging the scope of tortious
> inference [sic] for prospective relationships to include delays would run afoul of
> the policy encouraging competition in the market. We decline to expand the scope
> of tortious interference with prospective business relationship to include conduct
> that results in only the delay of a contract.

*Id.* at *28-29 (quotations and citations omitted).

     Although Plaintiff here alleges that Defendants' actions affected the terms and conditions

of the contract, rather than caused a delay, the Court still finds the analysis in *Texas Disposal*

persuasive. The only relevant case Plaintiff cites to support the assertion of this claim is *Wal-*

*Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001). *Wal-Mart* does not address the question at issue; unlike here, the prospective contractual relation in *Wal-Mart* did not materialize. *Id.* at 714. Plaintiff does not cite any cases that support a claim of tortious interference with prospective economic relationship when the formation of the contract was not actually prevented. Like delays, changes in contract terms caused by competitor conduct are inherent in the course of doing business, and the Plaintiff has not shown sufficient reason for this Court to expand the scope of the claim of tortious interference with prospective business relationship to include conduct that results only in a change in the terms of a consummated contract. *Cf. Tex. Disposal*, 2005 Tex. App. LEXIS 4898 at *28-29.

As a result, the Court **DISMISSES,** with prejudice, Plaintiff's claim of tortious interference with prospective economic relationship.


## V. CIVIL CONSPIRACY AND AIDING AND ABETTING

Defendants argue that Plaintiff's claims of civil conspiracy and aiding and abetting fail. Specifically, Defendants state that civil conspiracy and aiding and abetting are not independent, actionable claims; and that "because Plaintiff's claims for [sic] malicious prosecution, conversion, and tortious interference fail as a matter of law," the Court should also dismiss these claims.

Liability for aiding and abetting and conspiracy is predicated upon the commission of an underlying tort. *See Tex. Carpenters Health Benefit Fund v. Phillip Morris, Inc.*, 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998). To survive a motion to dismiss on his civil conspiracy and aiding and abetting claims, Plaintiff's pleading must contain underlying torts which survive dismissal. The

-13-

Court has dismissed each of Plaintiff's claims that could act as an underlying tort. As a result, the Court **DISMISSES** with prejudice Plaintiff's claims of civil conspiracy and aiding and abetting that allege conversion, malicious prosecution, or tortious interference with prospective economic relationship as underlying torts. The Court **DISMISSES** with prejudice Plaintiff's claims of civil conspiracy and aiding and abetting that allege tortious interference with contract and/or business relationship based on acts of interference that occurred before April 26, 2003, as underlying torts. The Court **DISMISSES** without prejudice Plaintiff's claims of civil conspiracy and aiding and abetting based on acts of interference that occurred before April 26, 2003, as underlying torts. The Court **GRANTS** Plaintiff leave to amend with respect to this claim to allege claims of conspiracy and/or aiding and abetting that allege tortious interference with contract and/or business relationship based on acts of interference that occurred after April 26, 2003, as underlying torts. *See Lopez*, 2004 U.S. Dist. LEXIS 18220, at \*13-14.

## VI. LEAVE TO AMEND

In his brief, Plaintiff argues that he should be granted leave to amend his claim of tortious interference with contract or business relationship, to the extent that the Court finds it deficient. The Court dismisses with prejudice those claims identified as such above. The remainder of Plaintiff's claims are dismissed because they are inadequately pleaded. The Court finds that justice would be served if Plaintiff were permitted to amend his Complaint to comply with this Order, if possible. Therefore, the Court grants the Plaintiff leave to amend the claims noted

earlier in this Order.[12] If he wishes to do so, Plaintiff shall file an amended complaint within 30 days of this order. *See In re Michaels Stores, Inc. Securities Litig.*, 3:03-CV-0246-M, 2004 U.S. Dist. LEXIS 24919, at *51-52 (N.D. Tex. Dec. 10, 2004) (Lynn, J.).


## VII. MOTION FOR LEAVE TO FILE MOTION FOR MORE DEFINITE STATEMENT

Defendants move for leave to file a motion for more definite statement. The Court **DENIES** the Motion as moot.


## VIII. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants Pollock and Barker urge that the Court dismiss all claims against them for lack of personal jurisdiction. Because the Court dismissed each claim against them, the Court **DENIES** the motion as moot.


## IX. CROSS-MOTION FOR JURISDICTIONAL DISCOVERY

Plaintiff moves for jurisdictional discovery. The Court **DENIES** the motion as moot.

**SO ORDERED.**

December 14, 2005.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[12]The Court grants Plaintiff leave to amend the following claims: (1) tortious interference with contract and/or business relationship, (2) conspiracy to commit tortious interference with contract and/or business relationship, and (3) aiding and abetting tortious interference with contract and/or business relationship.

-15-