IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2009

Charles R. Fulbruge III
Clerk

No. 07-10801

MICHAEL R ROEHRS

Plaintiff-Appellant

v.

CONESYS, INC.; RONALD E SPIRE; J-TECH, INC., JOHN POLLOCK; JULIE BARKER

Defendants-Appellees

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL - 2 2009
CLERK, U.S. DISTRICT COURT
By _____ Deputy

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CV-829

Before WIENER, GARZA, and DeMOSS, Circuit Judges.

PER CURIAM.*

Plaintiff-Appellant Michael Roehrs ("Roehrs") appeals the district court's grant of summary judgment to Defendants-Appellees Conesys, Inc., Ronald E. Spire, J-Tech, Inc., John Pollock, and Julie Barker (collectively, "Defendants"). Roehrs, who was the former majority shareholder of Fiber Systems International ("FSI"), alleges that Defendants committed several torts under Texas law in blocking Roehrs' attempt to regain control over FSI.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 07-10801

I

The chronology of events is important in understanding the transactions underlying Roehrs' claims. Michael Roehrs founded FSI in 1993 and was the company's CEO and majority shareholder. In 2001, a group of minority shareholders (hereinafter "the Minority Group") sued Roehrs. The Minority Group also sold approximately 10% of all FSI shares to Conesys, a holding company that was interested in FSI. During the subsequent litigation between Roehrs and the Minority Group, the Texas state trial court appointed an Attorney Ad Litem, Timothy Zeiger ("Zeiger"), to oversee FSI. Zeiger retained the accounting firm of Whitley Penn, which assessed the value of FSI to be approximately $23.4 million.

The litigation between Roehrs and the Minority Group proceeded to mediation and culminated in a settlement. The settlement gave Roehrs ninety days to finance the purchase of the Minority Group's FSI shares for approximately half their value (as valuated by Whitley Penn). Should he fail to raise the capital, the Minority Group would be given the opportunity to purchase Roehrs' shares for the same price. Also as part of the settlement, the Minority Group was required to cooperate in conducting due diligence during the 90-day period.

Roehrs attempted to raise the capital by contacting several companies, including Amphenol, Inc. ("Amphenol") and Southwest Mezzanine Investments ("SMI"). This appeal arises out of Conesys' alleged interference with a potential deal with Amphenol.[1] An agent of Conesys called Amphenol to discuss Conesys' right of first refusal with respect to the FSI stock owned by Conesys; Roehrs claims that the phone call, as well as the Minority Group's interference with due diligence, prevented Roehrs' deal with Amphenol from coming to fruition.

---

[1] Roehrs abandoned his claims with respect to his negotiations with SMI.

Amphenol representative Craig Mullett offered deposition testimony stating that Amphenol was interested in acquiring FSI and could have "beaten the deals" offered by other entities interested in financing Roehrs' purchase of the Minority Group shares. No specific terms of a deal were discussed by Amphenol and Roehrs, though a non-disclosure agreement was signed and Amphenol began due diligence on a possible transaction. Roehrs alleges that it was at this point that Conesys interjected itself into discussions between Amphenol and Roehrs, asserting a right of first refusal to buy the Minority Group's shares. In November 2003, Roehrs informed Amphenol that he would be conducting the deal with another investor, Red River Venture Partners ("Red River"), as his 90-day window was about to expire. Roehrs ultimately entered into a binding letter of intent with Red River on terms that Roehrs argues were far less favorable to him than a prospective deal with Amphenol.[2] He received the necessary financing and purchased the Minority Group's shares for $5 million. In 2005, fourteen months after purchasing the Minority Group's shares, he sold FSI to Amphenol for approximately $30 million, making a profit of approximately $16 million. He brought suit in district court against Conesys for tortious interference with prospective economic relations, arguing that but for Conesys' involvement in his earlier discussions with Amphenol, he would have been able to conduct a deal with Amphenol in 2003 and make a substantially higher profit. The district court, after hearing oral argument and considering more than 2000 pages of exhibits, granted Conesys' motion for summary judgment, holding that Roehrs had not met his burden with respect to the damages he suffered as a result of Conesys' alleged interference. Roehrs appeals the district court's grant of summary judgment as well as the court's earlier

---

[2] Red River advanced approximately $5 million dollars in exchange for almost half of FSI's shares and a convertible promissory note.

dismissal of his malicious prosecution claim and the court's striking of his Supplemental Appendix. For the following reasons, we affirm.

II

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. The evidence should be viewed in the light most favorable to the nonmoving party, and the record should not indicate a genuine issue as to any material fact. We may affirm the district court's summary judgment ruling on any ground supported by the record. *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 237-38 (5th Cir. 2006).

We address Roehrs' appeal of the district court's order on two grounds: (A) the district court's finding that the alleged damages are too speculative; and (B) the district court's holding that damages for mental anguish are not permitted under Texas law.

A

The district court held that because the damages for lost profits alleged by Roehrs are too speculative, they could not be submitted to a jury and thus summary judgment in favor of Conesys is proper. Roehrs argues that in so holding, the district court improperly weighed the evidence and incorrectly applied Texas law governing claims of tortious interference with existing and prospective economic relations.

Claims of tortious interference with prospective economic relations ("TIPER") and tortious interference with existing contract require a showing of actual harm and damage that resulted from the defendant's interference. *See Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008)(citing to Texas cases that set out elements of TIPER claim); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)(articulating elements of tortious interference with contract claim). Thus, damages must be established for both of Roehrs' tortious interference claims.

Under Texas law, neither the fact and amount of damages alleged can be speculative; both must be established with "reasonable certainty." A plaintiff's failure to show either acts as a bar to recovery. *Burkhart Grob Luft Und Raumfahrt GmbH & Co. KG v. E-Sys., Inc.*, 257 F.3d 461, 467 (5th Cir. 2001)(citing to *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279-80 (Tex. 1994)). The inquiry into the "reasonable certainty" of the damages is flexible and fact-sensitive. *Id.*

Roehrs argues that he has provided sufficient evidence of damages based on two different models: one which relied on the amount Amphenol eventually paid when it acquired FSI in 2005 (thirty-million dollars), and one which used the independent valuation of FSI conducted by Whitley Penn, which judged the company to be worth $23.41 million. The district court found that the damages models were too speculative to establish both the fact and the amount of damages because they did not account for changed circumstances between Amphenol's prospective purchase of FSI in 2003 and its actual purchase of FSI in 2005.

The district court was correct in finding that the record does not supply sufficient evidence of lost profits resulting from the alleged tortious interference with a prospective contract between Amphenol and Roehrs. In order to demonstrate lost profits, Roehrs must show, by competent evidence with reasonable certainty, that he would have made more in a deal with Amphenol than the amount he made from the deal that was conducted with Red River financing. *See Holt Atherton Indus. Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)("[At] a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.") No such data exists here. Though Amphenol's representative Craig Mullett testified as to its interest in acquiring FSI, and opined that Amphenol could have "beaten the deal" offered by Red River, there is no evidence

in the record as to how much Amphenol would have considered offering for FSI in 2003, likely because discussions between Roehrs and Amphenol were at a very preliminary stage when the alleged tortious interference occurred. In his deposition testimony, Mullett could not provide a range of prices that Amphenol would have paid for FSI, nor could he point to any discussion between Roehrs and Amphenol as to what form the financing would take. Roehrs is also unable to provide any evidence as to how many fewer shares he would have had to give up in a deal with Amphenol as opposed to the deal with Red River he eventually struck. Without any explanation of what "beating" the deal with Red River might have constituted, the amount Amphenol would have offered (and any concomitant calculation of lost profits) simply cannot be established with reasonable certainty. *See Texas Instruments*, 877 S.W.2d at 279 ("Profits which are largely speculative, as from an activity dependent on . . . chancy business opportunities . . . cannot be recovered.")

Roehrs argues that the Whitley Penn evaluation provides an independent estimate of the amount FSI was worth, and thus the amount Amphenol would have paid, in 2003. However, as the district court found, it is purely speculative to assume that Amphenol would have paid fair market value in 2003. No evidence was provided that Amphenol had accepted Whitley Penn's valuation, or that Amphenol was willing to pay full price for all of the shares when Roehrs would be able to purchase the Minority Group's shares at a discounted price, pursuant to the SPA. Given that Roehrs had a very narrow 90-day window within which to conduct the deal before he lost his opportunity to purchase the Minority Group's shares, it is speculative to assume that Amphenol would not have leveraged its position to pay less than full market value for FSI shares (as Red River did.)[3] Similarly, the amount paid by Amphenol in 2005—when the

---

[3] Again, given that there is no evidence as to the *kind* of deal Amphenol and Roehrs would have struck in 2003—whether an outright purchase of FSI, a partnership investment,

6

ownership structure of FSI and the obligations of the owners were completely different[4]—does not establish "with reasonable certainty" the amount Amphenol would have paid in 2003.[5]

Contrary to Roehrs' assertions, the district court did not require him to prove the specific terms of a prospective contract in finding that his damages models were too speculative—the court could not find *any* basis for a range of damages that could be submitted to a jury. Roehrs is unable to establish the amount of damages he suffered with reasonable certainty. Thus, the district court was correct to grant summary judgment in favor of Conesys on this basis alone.[6]

---

or a debt or equity financing—no factfinder could infer from Amphenol's outright purchase of FSI in 2005 the amount that would have changed hands in 2003.

[4] In 2005, Amphenol purchased FSI from Roehrs as the sole owner (as Roehrs was able to buy out the Minority Group with the assistance of financing from Red River). This is a very different environment from 2003, when Amphenol was faced with an FSI ownership that included Roehrs, the Minority Group, and other shareholders (i.e. Conesys) that would potentially exercise a right of first refusal. Given the change in circumstances, Amphenol's 2005 purchase of FSI does not provide a basis for determining how much it would have offered in 2003.

[5] The instant case is distinguishable from *DSC Comm. Corp. v. Next Level Commc'ns.*, 107 F.3d 322 (5th Cir. 1997), in which we upheld a damages award for lost profits for a product that had yet to be placed on the market. In that case, the jury heard extensive expert testimony as to the market conditions supporting the product's profitability, the plaintiff's history of producing profitable telecommunications products, the success of a comparable product, and the relative market shares of the company and its competitors, all supported by data obtained from several respected sources in the telecommunications industry. The evidence in *DSC* is both qualitatively and quantitatively stronger than the evidence Roehrs offers here.

[6] Roehrs contends that the district court conflated the fact and amount of damages in arriving at this conclusion, arguing that the court placed the burden on Roehrs to prove the specifics of a hypothetical 2003 contract between Amphenol and Roehrs as opposed to merely a reasonable probability of such a contract as required by Texas law. However, the district court did not have to make a finding as to whether Amphenol would have contracted with Roehrs but for Conesys' alleged interference in order to find that the damages models offered by Roehrs are predicated on purely speculative assumptions about how Amphenol valued FSI in 2003. The district court independently found the fact of damages to be speculative, based on the paucity of evidence that the Amphenol deal would have been more lucrative than the

B

The district court held that Roehrs' was not entitled to mental anguish damages resulting from Conesys' alleged tortious interference. The Texas Supreme Court has not yet ruled that plaintiffs may recover mental anguish damages for such claims, and there is a conflict among the intermediate state courts on the issue. *Compare, e.g., Exxon Corp. v. Allsup,* 808 S.W.2d 648, 660 (Tex.App.– Corpus Christi 1991, writ denied) *with Hallmark v. Hand,* 885 S.W.2d 471, 481 (Tex.App.– El Paso 1994, writ denied). Roehrs argues that this Court should make an "*Erie* guess" as to Texas law and follow the intermediate courts that hold that Texas permits the recovery of mental anguish damages in cases of tortious interference with contract.

We do not address this argument because we find that Roehrs would not prevail on his tortious interference claims as the alleged monetary damages are speculative, as discussed *supra*. While it is left to the Texas Supreme Court to determine whether mental anguish damages are recoverable at all for TIPER claims, we are unable to locate any case in which mental anguish damages were treated as the *sole* basis for satisfying the actual damages element of a TIPER

---

Red River deal. Because we affirm on the basis of the uncertainty of the amount of damages, however, we need not specifically address the issue of the fact of damages.

claim.⁷ Accordingly, we affirm the district court's grant of summary judgment to Conesys on this issue.⁸

### III

### A

Roehrs argues that the district court erred in dismissing his claim against Conesys for malicious prosecution. Below, Roehrs asserted that Conesys acted with malice in instigating the 2001 lawsuit against him. We review de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir.2002), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff," *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir.2007)(per curiam).

The district court held that Roehrs' malicious prosecution claim was barred by a one-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE §16.002(a)("A person must bring suit for malicious prosecution . . . not later than one year after the day the cause of action accrues."). Ignoring the plain language of the statute, Roehrs argues that a two-year statute of limitations governs claims for civil malicious prosecution, citing a Texas Supreme Court case from 1885 for this proposition. *See Bear Bros. & Hirsch v. Marx & Kempner*, 63 Tex. 298 (1885). The *Bear Brothers* case distinguished claims for malicious civil

---

⁷ In the unpublished case cited by Roehrs, *Watson v. Houston Ind. School Dist.*, 2005 WL 1869064 (Tex.App.–Houston Aug. 9, 2005), the court held that, assuming the plaintiff could succeed on his tortious interference claim, he would be entitled to recover damages *beyond* those he recovered for lost wages. *Id.* at *6. In *Exxon Corp.*, though the court held that "[c]ompensation for mental anguish and injury to feelings are recoverable as elements of actual damage when the plaintiff establishes an intentional tort," the jury award in that case was for loss of earnings as well as mental anguish damages. *Id.* at 661. The weight of authority thus strongly suggests that mental anguish damages alone are insufficient to support a TIPER claim.

⁸ Because we affirm the district court on the grounds discussed above, we do not need to address alternate grounds for granting summary judgment addressed by the parties.

prosecution from claims for malicious criminal prosecution, holding that a two-year statute of limitations was applicable to the latter. The Texas legislature has revised the Code since *Bear Brothers* was decided, however, and the current relevant provision does not distinguish between civil and criminal malicious prosecution claims, applying a one-year limitations period to "suit[s] for malicious prosecution."[9] Though we recognize that the Texas Supreme Court has not explicitly overruled its 123-year old decision, we are bound to apply the statute as it is written and do so here. *See also Internet Corporativo S.A. de C.V. v. Business Software Alliance, Inc.*, 2004 WL 3331843 at *7(S.D.Tex. Nov. 15, 2004)(unpublished)(rejecting theory that different statute of limitations applies, and citing to Texas cases holding that one-year statute of limitations is applicable to malicious civil prosecution claims).

B

Roehrs argues that the district court erred in granting Conesys' motion to strike Roehrs' supplemental appendix from the record. A motion to strike is reviewed for abuse of discretion. *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

The district court did not abuse its discretion in granting the motion to strike. The district court stated in its order that it had not authorized the submission of additional evidence, and that Roehrs had not moved the Court for leave to file. We accord significant deference to a trial judge's evidentiary rulings, *see Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1009 (5th Cir.1989), and only reverse where it has affected the substantial rights of the parties, *Stitt*

---

[9] We note also that the provision that Roehrs argues applies to his claim does not mention malicious civil prosecution at all. *See* TEX. CIV. PRAC. & REM. CODE § 16.003 ("... a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.")

*Spark Plug Co. v. Champion Spark Plug Co.*, 840 F.2d 1253, 1259 (5th Cir.1988). Roehrs has not demonstrated prejudice resulting from the exclusion of his supplemental appendix. Accordingly, we affirm the district court's order.

IV

For the reasons above, we AFFIRM the district court's grant of summary judgment, its dismissal of Roehrs' malicious prosecution claim, and its grant of the motion to strike Roehrs' supplemental appendix.